## GRAVETT vs. THE STATE OF GEORGIA.

1. Section 4368 of the Code, on the subject of kidnapping, provides for two cases—one, where the child kidnapped has a parent or guardian, and the other, where it has neither. In the latter case, it must be forcibly, maliciously or fraudulently led, taken or carried, or decoyed, or enticed away against its own will, and without its consent; in the former, if these things shall be done against the will and without the consent of the parent, irrespective of that of the child, this alone would complete the offense.

(a.) It is incumbent upon the legislature to make provision for preserving the good order, peace and security of society; and when an act passed for that purpose is susceptible of a construction which completely attains it, it is the duty of the courts to give the act that construction, rather than one which would exclude from its operation a portion of the cases essential to its complete aim and object.

2. Where instructions are asked by the jury upon particular questions, after they have retired, it is not the duty of the court to repeat its entire charge as previously given; all that is necessary is that the charge should fully present both aspects of the case, and should call the attention of the jury to that view of the facts consistent with innocence as well as the one suggesting guilt.

(*a.*) The defendant and his counsel having been in court when special instructions were asked and given, and having made no objection thereto, and having asked no additional instructions, they thereby acquiesced in what was done.

3. Under an indictment for kidnapping, it was competent to show that the father was unwilling that his minor child should be taken, carried or decoyed away, and to prove any efforts that he made, or precautions which he took, to prevent it.

(*a.*) It was not essential to the guilt of the defendant that he should have been notified of the father's unwillingness to relinquish his dominion over his child and of all the circumstances showing that fact.. Had it been necessary, his knowledge was sufficiently shown.

4. It appearing that the defendant was a married man, but had avowed his intention of procuring a license and marrying the child taken away by him, it was admissible to introduce in evidence a libel for divorce brought by him against his lawful wife. The fact established by it had already been put in evidence on the part of the defendant, and no injury was done him by its admission.

5. There was no error in excluding evidence of the parent's harsh treatment of his family. This would not authorize the defendant to kidnap his child.

6. Where a female witness was asked if she did not have children, and replied with manifest resentment and reluctance that she had one child, and upon then being asked if she had ever been married, on objection to this question, there was no error on the part of the court in instructing the witness that she need not answer the question, nor in ruling out the former answer, on her declining to answer the second question.

(*a.*) 14 *Ga.*, 258, considered and qualified.

7. The verdict was required by the evidence.

November 11, 1884.

Criminal Law. Laws. Construction Practice in Superior Court. Charge of Court Evidence. Infants. Witness. Kidnapping. Before Judge HARRIS. Carroll Superior Court. October Adjourned Term, 1883.

To the report contained in the decision, it is only neces-

sary to add the following: W. C. Gravett was indicted for kidnapping Euphrasia S. Noles, a child of E. M. Noles, under eighteen years of age. The indictment charged that the defendant " did fraudulently lead, take, carry, decoy and entice away " this child, against the will and without the consent of her parents.

After conviction, the defendant moved for a new trial, on the following among other grounds:

(1.) Because the court overruled a demurrer to the indictment.

(2.) Because the court re-charged the jury on special points, as stated in the second division of the decision.

(3.) Because the court admitted evidence, over objection of defendant, to show that the father of the girl alleged to be kidnapped had nailed up the windows of his daughter's room to keep the defendant from getting to her. [The court ruled that no sayings of the father were admissible, but that his acts to prevent defendant from reaching his daughter were admissible, whether notice of them was brought home to defendant or not.]

(4.) Because the court admitted in evidence the declaration in a suit for divorce brought by the defendant against his wife.—The ground of objection was irrelevancy.

(5.) Because the court refused to allow defendant to show that the father of the child was cruel to his family, and often treated them wrongfully. [In another ground it is stated that the defendant contended that the daughter had left voluntarily because of the cruelty of her father, and that the court confined the testimony to acts of cruelty to this daughter.]

(6.) Because the court ruled out the answer of the female witness, Sarah Noles, to the questions whether she was not the mother of a child, and whether she had ever been married, as set out in the sixth division of the decision.

(7.) Because the verdict was contrary to law and evidence.

v 74-13

The motion was overruled, and defendant excepted.

P. H. BREWSTER, for plaintiff in error.

H. M. REID, solicitor general; REESE & ADAMSON, for the state.

HALL, Justice.

1. The bill of indictment charged the defendant with fraudulently leading, taking, carrying, decoying and enticing away the daughter of the prosecutor, a child under eighteen years of age, without the consent of her parents, and is substantially in the language of §4368 of the Code.

The court charged the jury that kidnapping, under this section of the Code, was the forcible, malicious or fraudulent leading, taking or carrying away, or decoying or enticing away, any child under the age of eighteen years from its parent or guardian, or against his, her or their will or wills, or without his, her or their consent or consents, and that if the state proved, beyond a reasonable doubt, that the defendant, in the county of Carroll, on the day named in the indictment, fraudulently took, led or carried away, or decoyed or enticed away, the daughter of the prosecutor, she being a child under eighteen years of age, without the consent and against the will of her parent, that they might find him guilty; that the offense consisted in the purpose of the defendant to deprive the parent of his dominion, power, custody and control over his child, and to substitute his own power, custody and control over her for that of her father; that when this was done, the crime was complete; but that it was incumbent upon the state to show all these material facts before a conviction could take place.

To this charge the defendant excepted, and assigns as error that the offense is not complete, unless it was also alleged and proved that the child kidnapped was fraudulently enticed and decoyed away against her own will and

without her consent, as well as that of her parent. Such, however, is not our apprehension of the scope and purpose of this statute. We agree with the view taken by the judge, and think that he rightly comprehended and expressed the object and intention of the legislature in its passage, when he charged the jury that the offense was complete if it was the purpose of the defendant fraudulently to deprive the parent, against his will and without his consent, of the dominion and custody of his child, and to substitute his own dominion, custody and control over the child for that of the parent. The statute evidently provides for two cases—one is where the child kidnapped has a parent or guardian, and the other where it has neither; in the latter case, it must be forcibly, maliciously or fraudulently led, taken or carried or decoyed or enticed away against its own will and without its consent; in the former, if these things shall be done against the will and without the consent of the parent, irrespective of that of the child, this alone would complete the offense. The purpose of the statute is two-fold: its object is to protect not only the rights of parents and guardians, but also those of children. It could never have been the intention of the lawmakers to leave unprotected and uncared for helpless children, who had been deprived of their natural protectors, and those for whom none had been provided by the tribunals of the country. The state is emphatically *parens patriœ*, and owes protection to all its citizens, adults and minors. It is charged with the duty of providing safe-guards for their rights, both absolute and relative, as well such as are inborn and natural as those conferred by society. The rights of personal liberty and personal security belong to all mankind, and the obligation to preserve them from invasion, or if invaded to afford redress for the wrong, is of the highest and most imperative character. Minor children have rights, whether they have parents or guardians or not. Society itself has an interest in the prosperity of all its members, and it is incumbent upon the

legislature to make provision for preserving its good order, peace and security, and when an act is passed for this object, and is susceptible of a construction that completely attains it, the manifest duty of the courts is to give it that construction, rather than one which would exclude from its operation a portion of the cases essential to its complete aim and object. Effect should be given to each and all its parts and to every word in it, and this is effected by the interpretation adopted by the court in this instance. While the provision in question is not marked by that clearness and precision of language which characterizes the penal Code of 1833, from which it is taken, yet it is sufficiently definite to leave no doubt either of the purpose of its enactment or of the cases it was designed to embrace.

2. The jury had been out for some hours deliberating upon the case, without reaching a conclusion, and the court directed an inquiry to be made whether they had agreed upon a verdict, or were likely to agree, to which they replied they had not, and asked to be re-charged. They were brought into court and asked upon what they desired to be re-charged, and in response stated, through their foreman, they wished to be charged again upon the law of the case; the judge complied with this request by repeating to them the charge previously given them, which has been already set forth. They were then asked if they desired to be charged on any other point, to which the foreman replied, that some of them contended that they must believe all the allegations before they could find the defendant guilty, to which the court responded, " I have so charged you. You must believe that the defendant did fraudulently lead, take or carry away, or decoy or entice away, Euphrasia Noles " (the prosecutor's minor child), " and that it was done against the will and without the consent of her father, otherwise you should acquit the defendant;" and not desiring further instructions, they were directed to return to their room and make a verdict,

and immediately after their return, they agreed and brought in a verdict finding the defendant guilty. The defendant and his counsel were in court when this occurred; they made no objection to anything that was done; they did not, as they might have done, request additional instructions upon any of the questions on which the jury desired to be re-charged; in short, by their silence and inaction, they acquiesced in what was said and done. It is now asserted that the judge erred in this additional charge, because it impressed upon the minds of the jury the position of the state's counsel, and did not again set forth the grounds of the defence, as had been done in the original charge. Without reference to any other question, we do not agree to what is assumed in the groundwork of this objection. This charge was as favorable to the defendant as to the state, and did cover the theory, both of the defence and prosecution, as fully as did the original charge. We do not understand that, when instructions are asked upon particular questions, it is the duty of the court to repeat its entire charge as previously given. Such a practice might lead to confusion, and would certainly protract proceedings needlessly. All that is necessary is that the charge should fully present both aspects of the case, and "should call the attention of the jury to that view of the facts consistent with innocence, as well as the one suggesting guilt." 34 *Ga.*, 407.

3. It was certainly competent to show that the prosecutor was unwilling that his minor child should be taken, carried or decoyed away, and any efforts that he made or precautions that he took to prevent it,—as the nailing up the window to her room,—were admissible in evidence to establish this fact. If it had been essential, that knowledge of this fact should be brought home to the defendant, in order to fix his guilt; what occurred immediately after the flight of the child from the father clearly shows that he had knowledge of the father's aversion to the deed, and authorized the inference that the departure was the

result of a previous understanding between her and him; for, when she left, he was in the vicinity, and she went immediately to him; instant pursuit was made, and he helped her off; he even fired a pistol at one of the family engaged in the pursuit; he carried her to the house of his kinsman, where she was lodged and harbored during the night; he appeared there early the next morning and carried her away; and although he was a married man, seeking a divorce from his lawful wife, he avowed his purpose to procure a license and marry her. It is true that on that day he accompanied her to the vicinity of her brother's house, and while he remained at a convenient distance, sent her into the house, but she went there for the purpose of procuring assistance to enable her to get her clothing from her father's; that she failed in the object of this visit, and afterwards met him where he had been left; on her return to him, she was accompanied by her sister and sister-in-law, and by their persuasion she was permitted to return to the house with them, where she remained secreted for a portion of two days, when she left on hearing repeated reports of a pistol, which she declared was the signal for meeting agreed on between them; from that time she was lost sight of by the family until her dead body was found, six months afterwards, in the river. The crime was complete on the day of her flight, and nothing that occurred afterwards had the slightest tendency to weaken these strong proofs of the defendant's guilt. Besides, it was not essential to the guilt of the defendant that he should have been notified of the father's unwillingness to relinquish his dominion over his child, and of all the circumstances that tended to demonstrate his purpose. The father was not bound to declare to him his apprehensions and to require him to desist; he was under no obligation to remonstrate with him, that he might arrest the commission of the offense which he feared he contemplated. Such a course might have tended to precipitate the catastrophe he was anxious to avert.

4. The libel for divorce was admissible as a circumstance to corroborate and strengthen the proofs of the state; the fact that it established beyond controversy was already in evidence on the part of the defendant; and had it been objectionable for other reasons, which were not suggested and which do not occur to us, still we are at a loss to see what injury it could have done the defendant.

5. There was no error in excluding evidence of the prosecutor's harsh treatment of his family; whether he treated them kindly or otherwise was no concern of the defendant; certainly he was not responsible to the defendant for any shortcoming in this respect; and although he was amenable to the courts for this violation of his social duty, yet this did not justify the violent interference of the defendant, and excuse his open disregard of parental authority, by fraudulenly enticing and carrying off this girl. But even if this testimony, as was insisted, tended to show that the departure of this unfortunate child from her father was her own unaided act, and repelled, in a measure, the defendant's participation in her flight, yet he had the full benefit of it, for, at a subsequent stage of the case, the matter was gone into fully, and the result of the investigation was a complete vindication of the father's conduct. The allegation was shown to be groundless; the defendant was not therefore injured by its rejection when it was first offered.

6. When Sarah Noles, a female witness on the stand, was asked if she did not have children, she replied she had one child, but manifested resentment at the question, and an evident reluctance to answer. She was then asked if she had ever been married.—Objection was made to this question by the state's counsel, and in reply to the objection, the court stated that the witness need not answer the question. She declined to make answer, and the court ruled out the answer to the former question. Objection is made by the defendant to this ruling. There could have been but one purpose in offering this evidence, and that

was to impair the force of the witness's testimony; in other words, to discredit and impeach it.   It is not denied that a witness, fully appriscd of his rights in this respect, may voluntarily answer questions tending to degrade or criminate him; but no such question seems to have been made or passed upon by the court below.   It is equally undeniable, however, that he is not required to testify to any matter which may criminate or tend to criminate him, or which shall have a tendency to bring infamy or disgrace, or public contempt upon himself or any member of his family.   Code, §3814, and citations of cases there; *Id.*, §3854, sub-sec. 3; sec. 1, par. vi., Bill of Rights, Code, §4998.   Our court has upheld this right with a steady hand, and has never suffered it to be impaired, or trenched upon, by evasion or in any other manner.   In this respect, it has never allowed a witness to be entrapped or imposed upon.   It has made it the imperative duty of the judge to see that he is not circumvented, going so far as to declare that the party himself cannot " even waive this protection, for the law is, in this regard, his guardian." 14 *Ga.*, 258.   This case does not require us to go to the extreme length laid down by that last cited, and it is proper to say that, without qualification, we cannot give our sanction to the doctrine there announced; indeed, we think that its latitude is not warranted by the case of Lee *vs.* Read, 5 Beavan, 381, 385, relied on to support it.   All that was held by the master of the rolls in that case was, that a party, by a previous covenant to answer a bill within a given time, did not thereby waive the protection that the law gave him from disclosing matter that might tend to criminate him; that, notwithstanding such agreement, he might protect himself by demurrer, plea or answer, or in any way in which he could bring the matter fairly under the consideration of the court.   As thus qualified, the principle announced, we think, is sound, and fully sustains the action of the court in the present case.

7.  A careful consideration of this record satisfies us that

the verdict is not only fully sustained, but is required by the evidence. It would be difficult to make out a case less open to doubt.

Judgment affirmed.