26590. BOATRIGHT *v.* THE STATE.

DECIDED JANUARY 7, 1938.

*I. J. Bussell, A. J. Tuten, Mingledorff & Roberts,* for plaintiff in error.

*John S. Gibson, solicitor-general, C. A. Williams,* contra.

GUERRY, J. The State charged that the defendant, "on the 23rd day of January, in the year 1937, . . did then and there, unlawfully and with force and arms, maliciously, feloniously, fraudulently lead, take, carry away, decoy, and entice away one Pearl Carter, she being a child under eighteen years of age, against her will and without her consent, her parents, Lawton Carter her father, and Lovey Carter her mother being then dead, and she then and there having no guardian." This charge is based on the Code, § 26-1602, which is as follows: "Any person who shall forcibly, maliciously, or fraudulently lead, take, or carry away, or decoy or entice away, any child under the age of eighteen years from its parent or guardian, or against his will, or without his consent, shall be guilty of kidnapping." In construing this section, the Supreme Court in *Gravett* v. *State,* 74 *Ga.* 191, said that this law "provides for two cases—one, where the child kidnapped

has a parent or guardian, and the other where it has neither. In the latter case it must be forcibly, maliciously, or fraudulently led, taken, or carried or decoyed, or enticed away against its own will, and without its consent; in the former, if these things shall be done against the will and without the consent of the parent, irrespective of that of the child, this alone would complete the offense." This ruling was repeated in *Thweatt* v. *State,* 74 *Ga.* 821; *Sutton* v. *State,* 122 *Ga.* 158 (50 S. E. 60); *Arrington* v. *State,* 3 *Ga. App.* 30 (59 S. E. 207); *Carter* v. *State,* 14 *Ga. App.* 51 (80 S. E. 206); *Bryant* v. *State,* 21 *Ga. App.* 668 (94 S. E. 856); and see *Rowell* v. *State,* 41 *Ga. App.* 499 (153 S. E. 371); *Taylor* v. *State,* 25 *Ga. App.* 500 (103 S. E. 740); but this is the first instance that our research has revealed that a case has appeared in the appellate courts involving the kidnapping of a child who had neither parent nor guardian.

The only witness who appeared and testified at the trial was Pearl Carter, the girl alleged to have been kidnapped. Upon her testimony the case for the State must stand or fall. From her testimony it appears that she was an orphan, sixteen years of age, and lived in the home of an uncle. Her uncle's daughter was the wife of the accused, and she (the daughter) and her husband lived about a half a mile from his (the uncle's) house. She had no guardian. There was an intimate association between the two families. In the summer preceding the alleged commission of this crime the defendant began to take the witness with him to various places, usually in company with others. She testified: "On these trips he gave me money, one or two dollars. Up to that time I had had no improper relations with him. He told me that he cared for me. . . He continued for a long time to come and take me out at night. He continued it until we made that trip up the country to Macon together. He took me out regularly until we made that trip, about once a week. In addition to money he gave me a ring in September. . . He said he loved me, and he gave me money and everything. I loved him at that time. I loved him when he started going with me and was giving me these presents. I loved him when he first started. . . When he asked me about going on that trip, I told him I would go. I thought I loved him. When he approached me about making that trip I was on the other side of Douglas. He had not given me

anything that night. After he asked me about making the trip, and I told him I would go, he did not at that time leave anything with me. I do not remember how long that was before the Saturday that we went away. . . We had planned that trip to Macon three or four months. The reason we did not make the trip sooner was because we had no chance. It was on Thursday that I agreed to go with him on that Saturday night. He said we were leaving Saturday night. At that time he left $100, in two $50 bills, with me. . . Nothing was said about my preparations for the trip, that is about my clothes and so forth. . . He wrote me a letter which I tore up. He just told me in the letter that we were leaving about 7:30, and asked me to write a note and tell them I was going off with another boy. I wrote the note and left it on the dresser in Willie Carter's home. . . I got my clothes out and carried them down the lane on Saturday night before he came, and put them down there in the lane outside of the road. There had been no conversation between him and me about the clothes before I did that. Yes, he came that Saturday night, dimmed his lights, and I met him in front of the gate. He wrote me that when he dimmed the lights I was to go out there, and when the car came and the lights were dimmed I went." It appears that the two were away three days, visiting Macon, Atlanta, and Hawkinsville, Georgia. She testified further on cross-examination: "I loved Mr. Boatright from the start. The first time he asked me to go out with him was when he asked me to go down to that place by Waycross and I agreed. I went with him because I loved him. I went to be with him. I went with him to these other places because he asked me. It was also because I loved him, and I wanted to be with him. It was for the same reasons that I went with him to Baxley on the 23rd of January. I went with my own consent. He asked me to go, and I agreed to go. . . I had been in love with him about a week or two before I started going with him down to the springs in Ware County. I was willing to go with him anywhere he suggested, because I loved him and wanted to be with him. He and I had this planned for several months to go to Baxley, Macon, Atlanta, and Hawkinsville. He and I discussed it together several times, and I agreed to go with him. I did not go because he gave me the ring. Yes, I went because he led me off into it by giving me money. I loved him, and would have

gone with him if he had not given me money. I did not go because he gave me the money, but I went because I loved him. What he did to me while we were away I let him do because I loved him."

It only remains to be asked, does this evidence authorize a finding that the defendant forcibly, maliciously, or fraudulently led, took, or carried or decoyed or enticed away Pearl Carter against her will and without her consent? Is a defendant who, for a fraudulent and evil purpose, leads, takes, carries, decoys or entices away a girl sixteen years of age, who has no guardian or parent, guilty of the offense of kidnapping under the above-quoted section, where the girl knew of his purpose, and consented to and co-operated in making the trip because she loved him? We think not, for the reason that there is an absence in such case of that essential element of fraud—words or conduct, such as tends to destroy or take away the exercise of free will or choice on the part of the girl who has reached the age of discretion. The fact that the defendant by attentions, presents, etc., caused the girl to become infatuated with him, and because of such infatuation she went away with him, does not make the defendant guilty of kidnapping, if she knew his purpose and planned and co-operated with him in making the trip of her own free will and consent. There is not the slightest evidence that defendant made false and fraudulent promises to her in order to induce her to make the trip. She was of sufficient age to make her capable of entering into a valid contract of marriage, and capable of consenting to sexual intercourse to prevent its consummation from being rape. We can conceive of instances where a girl may be deceived and go away with a man under some pretence, with no intent to be taken away on a trip. However, in the present case the going away was planned by both parties for several months before its consummation. Indeed the evidence shows that she had been making other trips with the defendant before the trip for which he was indicted. Though she was in love with him, which love may have been induced by the defendant by his attentions and gifts, yet it is still evident from her testimony that she was in full possession of her faculties and had a perfect acquaintance with what she was doing; and therefore it does not seem that she was fraudulently decoyed or enticed way against her will and without her consent. The facts and circum-

stances of this case may make the defendant guilty of some other offense, and were sufficient to raise a righteous indignation in the hearts of good jurors; but we are unable to concede that they make out the offense charged.

*Judgment reversed. MacIntyre, J., concurs. Broyles, C. J., dissents.*